## Germania Fire Insurance Company v. Turley.

(Decided November 24, 1915.)

### Appeal from Daviess Circuit Court.

1. Insurance—Fire Insurance—Violation of Condition in Policy— Effect of Discontinuance of Violation During Life of Policy—When Policy Revived.—The violation of a condition in a policy of insurance which authorizes a forfeiture thereof, merely suspends the insurance during the violation, and if the violation is discontinued during the life of the policy, and is non-existent at the time of loss, the policy revives, the insurance is restored, and the insurer is liable, although he has never consented to the violation of the conditions in the policy, and such violation has been such that the insurer could have declared a forfeiture thereof.

2. Insurance—Clause of Policy Providing for Forfeiture in Event of Change in Title, or Assignment of Policy Without Consent of In-

surer—Not Violated by Sale of Property or Assignment of Policy Without Insurer's Consent, if Title to Property and Possession of Policy Re-acquired by Assured Before Loss.—Where a policy of fire insurance contains a clause providing: "If the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, the property * * * covered in whole or in part by this policy * * * or in case any change takes place in title or if this policy be assigned * * * then in each and every one of the above cases this entire policy shall be null and void, unless otherwise provided by agreement endorsed thereon," and the insured sells the property and assigns the policy during the existence of the policy, without the consent of the insurer, the insurance does not, from that fact alone, become absolutely void, but is merely suspended; and if the assured re-acquires the title to the property and possession of the policy before the loss, the policy is renewed and the insurer becomes again liable.

C. M. FINN for appellant.

MILLER & SANDIDGE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.—Affirming.

The appellee, T. J. Turley, by this action sought to recover of the appellant, Germania Fire Insurance Company, $200.00, alleged to be the fair cash value of a barn owned by him, upon which, by its policy issued January 28, 1910, appellant granted him that amount of insurance against its loss by fire; it being alleged in the petition that in May, 1914, the barn was destroyed by fire. It appears from further allegations of the petition that the policy in question also granted to the appellee insurance of $3,500.00 on his dwelling house, located on the lot upon which the barn was situated, and that for the insurance upon the two buildings he paid appellant the premium demanded, amounting to $73.20; that the policy insured the two buildings for a period of five years from its date, and contains a provision making the insurance, in case of loss on either building, payable to the Fidelity & Columbia Trust Company, of Louisville, Kentucky, as its interest may appear; this provision being made because the trust company then had a mortgage upon the two buildings and the lot upon which they are situated.

The answer of appellant admitted the contract of insurance, as contained in the policy referred to, but denied any liability upon the policy, or that appellee was the owner or holder of the policy at the time of the destruction of the barn by fire, and alleged that subsequent

to the issuance of the policy and before the burning of the barn, the appellee sold and conveyed the property to Ben J. Head, and then assigned to him the policy sued on, by which he parted with the title to both the property and policy; that Head sold and conveyed the property to another; the sale and conveyance being accompanied by an assignment of the policy in question, without the consent of appellant endorsed on the policy; that by the terms of the policy it is provided that in case any change should take place in the title, possession or interest of the assured, the policy in that event should become null and void, unless otherwise provided by agreement endorsed thereon; and further, that appellant did not by any agreement endorsed on the policy waive its right to declare it null and void because of a change in the title to the property. Finally, it was alleged in the answer that by reason of such change in the title to the property, the policy became and is null and void.

Appellee filed an amended petition in which it was averred that on May 17, 1912, appellee sold and by deed conveyed the property in question to Ben J. Head, and at the same time assigned and transferred to him the policy of insurance upon the dwelling house and barn, and that on July 3, 1912, appellant, by an endorsement on the policy, consented to the assignment to Head. That on August 19, 1912, Head sold and conveyed the property to J. M. Hamilton, and at the same time transferred to him the policy, to which appellant, through its local agent at Owensboro, consented, and agreed to later endorse such consent upon the policy, which was then in the hands of the Fidelity & Columbia Trust Company, but which endorsement it did not, in fact, make; that on January 1, 1914, the property was sold and conveyed by Hamilton to R. H. Ford, and Hamilton then agreed to and did assign Ford the policy, to which assignment appellant, through its local agent, again agreed, such agreement being accompanied by a promise to have such consent endorsed on the policy, with which promise it also failed to comply; that on April 22, 1914, Ford sold and conveyed the property to the appellee, the original owner and vendor Ford assigning the policy to appellee, and that at that time appellee applied to appellant's local agent at Owensboro for its assent to the assignment of the policy from Ford to him, but that the agent informed him that he was not then acting as agent for ap-

pellant, and that the latter had determined to quit business in this State, or would soon do so.

It was further alleged in the amended petition that when Ford delivered to the appellee the deed reconveying to him the property, he also delivered to him the policy in question, and that when thereafter the barn was destroyed by fire he (Turley) was the owner and in possession of the policy and then held the title to the property covered by the policy, which restored the status of the parties to what it was when the policy was issued and delivered to appellee by the appellant. The facts alleged in the amended petition were, also, in substance, pleaded in a reply filed by appellee to the appellant's answer. The reply, in addition, contained a traverse of the averments of the answer with respect to the alleged right of appellant to rely upon the forfeiture claimed as arising under the clause of the policy providing therefor in case of a change in the title of the property, and pleaded a waiver on the part of appellant of such right of forfeiture.

By agreement of the parties a jury was waived and the law and facts submitted to the court, the trial resulting in a judgment in favor of appellee against appellant for the two hundred dollars claimed in the petition as the loss sustained on the barn. Appellant complains of that judgment and has moved this court to grant it an appeal, as provided by its rule 20, adopted in conformity to the act of March 17, 1914, regulating appeals in civil cases when the amount in controversy, exclusive of interest and costs, is as large as two hundred and less than five hundred dollars; which appeal, in view of the novelty of the question involved, we deem it proper to grant.

The provision under which appellant seeks to enforce the forfeiture claimed in this action is in the following language:

"If the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, the property covered in whole or in part by this policy  *  *  *  or in case any change takes place in title, possession or interest of the assured in the above-mentioned property  *  *  *  or if this policy be assigned  *  *  *  then in each and every one of the above cases this entire policy shall be null and void,

unless otherwise provided by agreement endorsed thereon."

The above clause does not mean that every conceivable change that might take place in the title of the property, or from an assignment of the policy, without the agreement of the insurance company endorsed thereon, would have the effect to forfeit the policy. In construing this clause the courts seem to have held that many transfers which apparently come literally within its terms cannot reasonably be held to be covered thereby. Thus it has been held that such a policy provision does not apply to transfers from one joint owner to another. Cooley's Insurance Briefs, 1726; Lockwood v. Middlesex Ins. Co., 47 Conn., 553; Hyatt v. Wait, 37 Barb. (N. Y.), 29; Germania Mutual Fire Ins. Co. v. Vick, 63 L. R. A., 334; Tillou v. Kingston Mut. L. Ins. Co., 7 Barb., 570; Royal Ins. Co. v. Coleman, 8 Ohio Dec., 404.

The provision in question now appears in all similar policies. Its principal object being to secure to the insurer a contracting party of its own choosing, we reasonably infer that it is intended to cover only such transfers of the property and policy as would permanently vest the interest of the person with whom the insurer contracted in another, or others, who were strangers to the transaction and with whom it had not consented to contract. It can not be claimed that the provision in question will prevent a merchant from selling to retail customers goods covered by the policy, yet if literally construed it might be said to do so. Neither can it be claimed that a transfer by one partner of all his interest in the insured property covered by the policy to his co-partner, is such a transfer as would be covered by the clause in question. It has also been held that this clause does not cover a change in the title, whereby the interest of the insured in the property insured is increased after the taking out of the policy, nor will it apply where the property insured is conveyed by a deed of assignment made by the insured for the benefit of creditors, whereby the insured property and the policy are both transferred to the assignee. Phoenix Ins. Co. v. Lawrence, 4 Met. (Mass.), 9. So, after all, the point to be determined is not what transfers may be covered by the language used, but what transfers did the parties intend should be covered by it?

In adopting the clause in question the parties did not have in mind a second assignment to the same party. Having issued the policy to appellee in the beginning, because under the contract he was the party insured by it, it must be assumed that appellant agreed he might stand as the party insured for the whole period of five years covered by the policy. This being true, it is not reasonable to suppose that the above clause was al-lowed to remain in the contract in order to protect appellant against a sale of the property or assignment of the policy, which, in the course of events, might be remade to appellee himself during the life of the policy. In other words, appellee, in accepting the policy containing the provision in question, will not be presumed to have been providing against a transfer of the property or policy to himself; nor, on the other hand, can it be presumed that appellant intended it to provide against a transfer of the property or policy to the very person with whom it was then contracting.

It is clearly shown that appellant, by a proper endorsement on the policy, consented to its assignment by appellee to Head shortly after the sale and conveyance of the lot by appellee to him. If Head had subsequently resold and conveyed the property to appellee, instead of to Hamilton, and at the time reassigned to him the policy, it could not be successfully contended that the failure of appellant to consent, in writing endorsed on the policy, to such reassignment of it to appellee, would have amounted to a violation of the above provision of the policy, or prevented appellee from recovering the indemnity provided by the policy, if the barn had been destroyed by fire following such resale of the property and reassignment of the policy to him. If this be true, how can it be said that the latter's right to recover for the loss of the barn is affected by the sale and conveyance of the property and transfer of the policy from Head to Hamilton, from Hamilton to Ford, and from Ford back to appellee? In the first instance, it would have been unnecessary for Head to obtain the consent of appellant, endorsed on the policy, to its reassignment to appellee. In the second instance, the title to the property and policy would equally be in appellee, the person primarily accepted by appellant as the assured, and the five years, to cover which the policy was issued, had not expired.

Whether any sale and conveyance of the lot containing the insured buildings, after the one from appellee to Head, following which appellant endorsed on the policy its consent to its assignment to Head, might have given appellant the right to enforce the forfeiture now demanded, is not presented for decision. In point of fact, the forfeiture was not claimed or had because of any of such sales, although appellant had notice of each through its Owensboro agent when made; and having delayed such right, if any it had, until the title to the property was restored to appellee, the person with whom it originally contracted and to whom it issued the policy, it cannot, it would seem, because of any of the changes in the title referred to, escape liability on the policy for the loss sustained by appellee after its reconveyance to him.

The principle here announced was recognized in Born v. Home Ins. Co., 110 Iowa, 379, 80 Am. St. Reps., 300, wherein it was held that although a policy of insurance provided that it should become forfeited if the property insured were thereafter mortgaged without the consent of the company, the fact that the property was so mortgaged did not avoid the policy, as the mortgage was paid off and satisfied prior to the loss, and such payment operated to restore the property to the protection of the policy. In a footnote to the opinion the doctrine in question is more clearly recognized in the following statement of the law:

"The general rule to be deduced from the weight of authority is, that the violation of a condition in a policy of insurance which works a forfeiture thereof merely suspends the insurance during the violation, and that if such violation is discontinued during the life of the policy, and is non-existent at the time of loss, the policy revives, the insurance is restored, and the insurer is liable, although he has never consented to a violation of the conditions in the policy, and such violation has been such that the insurer could, had he known of it at the time, have declared a forfeiture therefor." State Ins. Co. v. Schrenck, 27 Neb., 527, 20 Am. St. Reps., 696; Omaha Fire Ins. Co. v. Dierks, 43 Neb., 473; Johansen v. Home Fire Ins. Co. 54 Neb., 548; Home Fire Ins. Co. v. Johansen, 59 Neb., 349; Tompkins v. Hartford Fire Ins. Co., 22 N. Y. App. Div., 380, 49 N. Y. Supp., 184.

In a number of jurisdictions it has been held that although a policy of fire insurance contains a condition avoiding it if the premises are put to a changed use, or if certain prohibited articles are placed thereon, nevertheless, a change in the use of the insured premises or the keeping of prohibited articles thereon, without the consent of the insurer, if abandoned or discontinued before the loss occurs, renders the insurer liable where he has not declared a forfeiture of the policy before loss, and the increased hazard caused by such prohibited use in no way continues to affect the risk at the time of loss. In such case the insurance is merely suspended during the prohibited use of the premises and revived immediately upon its discontinuance. Joyce v. Maine Ins. Co., 45 Me., 168; U. S. Etc. Ins. Co. v. Kimberly, 34 Md., 224; Garrison v. Farmers' Fire Ins. Co., 56 N. J. Law, 235; Cumb. Valley, Etc., Ins. Co. v. Schell, 20 Pa. St., 31; Mutual Fire Ins. Co. v. Courtville Shoe Factory, 80 Pa. St., 407; New Eng. Ins. Co. v. Peoria Ins. Co., 41 Ill., 295; Ins. Co. v. McDowell, 50 Ill., 120, 99 Am. Dec., 497; Ins. Co. v. Garland, 108 Ill., 226; Traders' Ins. Co. v. Catlin, 163 Ill., 256; Lounsbury v. Protection Ins. Co., 8 Conn., 459; Phoenix Ins. Co. v. Lawrence, 4 Met. (Mass.), 9, 81 Am. Dec., 521.

In yet another footnote to Born v. Home Ins. Co., *supra,* we find this further statement of the law, more directly applicable to the facts of the instant case:

"If the policy contains a condition that it shall become void upon the alienation of the insured property without the consent of the insurer, it has been generally held that, if the insured sells or assigns the property during the existence of the policy, without the consent of the insurer, the insurance does not, from that fact alone, become absolutely void, but is merely suspended, and if the insured re-acquires the title before the loss, the policy is renewed and the insurer becomes again liable."

The cases cited in support of this doctrine, viz.: Power v. Ocean Ins. Co., 19 La., 28, 36 Am. Dec., 665; Hitchcock v. N. W. Ins. Co., 26 N. Y., 68; Lane v. Maine, etc., Ins. Co., 12 Me., 44, 28 Am. Dec., 150; Worthington v. Bearse, 12 Allen, 282, 90 Am. Dec., 152; Shearman v. Niagara Fire Ins. Co., 46 N. Y., 526, 7 Am. St. Reps, 380, seem to fully sustain it.

We have not been able to discover that the question before us has ever been decided in this jurisdiction, but in view of the authorities, *supra,* and the well-known rule that forfeitures are not favored, we are of opinion that the nullity or forfeiture of the policy made permissible by the clause under which the appellant here seeks to avoid liability for the loss sustained by appellee, must be understood as relating to cases where the insured has absolutely and permanently divested himself of all interest in the subject matter of insurance; for if, without any interest at the time of the loss, the insured cannot be said to have sustained any injury, and the person to whom a transfer is made without the consent of the insurer cannot recover, because he is not a party to the contract. But a different rule obtains where, as in the instant case, there was but a temporary change in the title to the property, the title being restored to the insured prior to the loss sustained; for in such case his relation to the contract of insurance is the same as when the contract was made and he is the identical party to whom the policy was issued. There was, therefore, only a temporary suspension of the risk, continuing while the insured remained divested of the title to the property, and a revival of the risk upon the restoration to him of the title, which, being in him at the time of the loss, entitles him to recover of the appellant the amount thereof.

Louisville German Fire Ins. Co. v. Schneider, 166 Ky., 285, does not conflict with the conclusion herein reached. The opinion therein differentiates the case from this. In that case the insurance company was a purely local mutual association, its charter and policy providing that a recorded conveyance of the insured property should, of itself, operate to terminate the membership of the assured in the association and invalidate the policy. Hence, it was held that such was the effect of the conveyance in that case. It also appears from the opinion that, because of the conveyance, the company actually struck the name of the assured from the membership list before the loss. In other words, there was a forfeiture of the policy before the loss occurred. In the instant case there was never a forfeiture of the policy, although the insurer had notice of each sale of the property when made.

For the reasons indicated we concur in the conclusion reached by the circuit court. Judgment affirmed.