BESS HOLDING CORPORATION, A BODY CORPORATE, AND THE CITY MORTGAGE COMPANY, BODY CORPORATE, PLAINTIFFS, v. IMPORTERS AND EXPORTERS INSURANCE COMPANY OF NEW YORK, A BODY CORPORATE, DEFENDANT.

Decided December 14, 1933.

For the plaintiffs, *Charles H. Stewart.*

For the defendant, *Arthur T. Vanderbilt.*

LAWRENCE, C. C. J. This suit was submitted to the court at the Monmouth Circuit, without a jury, for determination on the law and the facts. On May 31st, 1927, one Walter Tarasovis mortgaged certain premises on the easterly side of Bowyer avenue, in the city of Long Branch, for $4,500. On June 17th, 1927, the defendant company insured the dwelling house thereon against loss by fire in the amount of $5,000, payable to Tarasovis as owner and The City Mortgage Company as mortgagee, as its interest might appear, under a standard New Jersey mortgagee clause, as follows:

"Loss or damage, if any, under this policy, shall be payable to The City Mortgage Company, as such mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within-described property, nor by any foreclo-

sure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided also, that the mortgagee (or trustee) shall notify the company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee), and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trutsee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgageee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of their claim.".

On October 20th, 1927, The City Mortgage Company assigned its mortgage to Sarah E. Forman, and the policy of insurance was endorsed payable to her as her interest might appear. On February 11th, 1928, Walter Tarasovis sold the

premises to Milicent F. Lawrence, and there was no endorsement of change of ownership on the policy. On May 6th, 1930, Sarah E. Forman reassigned the mortgage to The City Mortgage Company. This assignment was not recorded. On June 17th, 1930, the policy was renewed for three years from that date, *recit—*Walter Tarasovis as owner, with standard mortgage clause attached, making loss payable to The City Mortgage Company, as mortgagee, as its interest might appear. On March 12th, 1930, the company had filed its bill in the Court of Chancery to foreclose the mortgage, so that at the time the renewal policy was issued, the proceedings were under way in that court. Final decree was entered in due course, and on July 25th, 1930, a sheriff's deed conveying the premises to The City Mortgage Company was delivered. The defendant insurance company was not formally notified of this conveyance. On July 30th, 1930, the mortgage company sold the premises to the plaintiff Bess Holding Corporation, and on the same date this corporation executed and delivered its bond and mortgage to secure the payment of $4,500 to the mortgage company. The insurance company had no actual notice of either of these transactions; no endorsement thereof was made on the policy or addition made thereto, nor did the mortgage company notify defendant of the transfer of title from Tarasovis to Lawrence, or of its own conveyance of the property to the holding corporation. On April 9th, 1931, the dwelling house covered was destroyed by fire. Proofs of loss were filed by the holding corporation as owner and by the mortgage company as mortgagee. Defendant refused to pay because of the circumstances involved, whereupon the present suit was brought.

The original policy issued by the defendant company, likewise the renewal, contained this provision:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void  *  *  *  if the interest of the insured be other than unconditional and sole ownership, or if  *  *  *  with the knowledge of the insured foreclosure proceedings be commenced or notice given of sale of any property covered by this policy, by virtue of any mortgage or trust deed; or if any change other than by

death of an insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard)."

It is sufficient to say that so far as the plaintiff Bess Holding Corporation is concerned it can take no benefit or advantage under the policy involved in the present suit. It is nowhere mentioned in it and not only this policy but that of which it was a renewal became void. The original·when the transfer of title from Tarasovis to Lawrence took place, without the assent or consent of the insuring company endorsed thereon or added thereto, and the renewal for the same reason, supplemented by the fact no such assenting endorsement was made thereon or the consent of the company added thereto as to the conveyance of the property by the mortgage company to the holding corporation. *Grunauer* v. *Westchester Fire Insurance Co.,* 72 *N. J. L.* 289; 62 *Atl. Rep.* 411; *Hanson* v. *National Liberty Fire Insurance Company of America,* 100 *N. J. L.* 215; 126 *Atl. Rep.* 453, and *Levin* v. *State Insurance Co.,* 105 *N. J. L.* 422. This plaintiff must therefore submit to a directed verdict in favor of defendant. At the. trial, it was not seriously argued to the contrary.

While I conclude that the same result must follow as to the plaintiff mortgage company, it is based on the additional reason that it not only breached the contract between it and the insurance company, but that it placed itself in the position of being unable to comply with another of its terms, that is to say, after the fire, it could not subrogate the insurance company to the same mortgage interest which the latter had insured in either the original policy or the renewal.

Both of the policies were void for the reason heretofore indicated, and while the standard mortgagee clause attached to a fire insurance policy is construed as an independent contract between the insuring company and the mortgagee (*Reed* v. *Firemen's Insurance Company of Newark,* 81 *N. J. L.* 523; 80 *Atl. Rep.* 462) and the latter is not affected by the dereliction or neglect of the mortgagor, it does not follow that such independent contract can itself be breached by the mortgagee and the benefit·thereof still be retained, upon the theory that the violation of a condition in a policy of insurance, which

works a forfeiture, merely suspends the insurance during the violation and that if the violation is discontinued during the life of the policy and is non-existent at the time of the loss, the policy revives, the insurance is restored, and the insurer is liable, although it never consented to a violation of the conditions of the policy, and such violation is such that the insurer could, had it known it at the time, have declared a forfeiture. *Germania Fire Insurance Co.* v. *Turley,* 179 *S. W. Rep.* 1059. It was here so argued in behalf of the plaintiff mortgage company.

The circumstances of the present case do not appear to justify the application of any such theory, however. The plaintiff company foreclosed its mortgage and bought in the property covered at the sheriff's sale. Had it chosen to retain the title so acquired, no violation of the insurance contract, as to the mortgagee's interest, would have been involved. *Employers' Fire Insurance Co.* v. *Ritter,* 112 *N. J. Eq.* 418; 164 *Atl. Rep.* 426. But it proceeded to convey the premises to a third person—the holding corporation without informing the defendant thereof and obtaining the required endorsement, and to take from the purchaser a new mortgage, likewise without the formal consent of the insuring company. It is true that the mortgage was for the same amount as the old one covered by the mortgagee clause attached to the policy in suit, yet it seems to me that a new status was created by plaintiff's own act not contemplated or permitted by the insuring contract.

2 *Joyce on Insurance* (ed. 1917), 2118, § 1036), carries the text: "If a policy is made payable to a designated mortgagee, as his interest may appear, it covers only such interest as he had at the issuing of the policy, and cannot entitle him to indemnity for loss suffered because of further loans made by him and secured by mortgages on the insured property." Citing *Attleborough Savings Bank* v. *Security Insurance Co.,* 168 *Mass.* 147; 46 *N. E. Rep.* 390, holding that under a policy payable in case of loss to a mortgagee as his interest may appear, and containing provisions that no act of anyone else shall defeat the right of recovery in the mortgagee, and giving the insurer in case of a loss, for which it is not liable

to the mortgagor, the right, at its election, to pay the amount of the mortgage and receive an assignment thereof, when the mortgagor has forfeited his right to the insurance by a transfer of the property, the mortgagee can recover on a loss only the amount due on the mortgage which he held when the contract was made and must be able to subrogate the insurer to the security as it then existed, if demanded. In *Macomber* v. *The Cambridge Mutual Fire Insurance Co.,* 8 *Cush.* (*Mass.*) 133, it was said: "If therefore the mortgage is paid, foreclosed or otherwise discharged and extinguished, such separate and collateral promise (as to insuring the interest) to pay the mortgagee would be determined." In New Jersey, however, this statement must be qualified as to the foreclosure of the mortgage and the acquiring of the title by the mortgagee, without disposing of it to a third person, by the rule indicated in *Employers' Fire Insurance Co.* v. *Ritter, supra.* As to the restrictive nature of an indemnity contract between the insuring company and a mortgagee, see *Kase* v. *The Hartford Fire Insurance Co.,* 58 *N. J. L.* 34; 32 *Atl. Rep.* 1057; *Weinberger* v. *Agricultural Insurance Co.,* 80 *N. J. L.* 202; 76 *Atl. Rep.* 343, and *Kupfersmith* v. *Delaware Insurance Co.,* 81 *N. J. L.* 664; 80 *Atl. Rep.* 561. If, as was held in the latter case, an assignment of a mortgage would not carry to the assignee the contract of indemnity made by the insuring company with the mortgagee without the consent of the company to the transfer, then it would seem that such consent would also be required in a case where the mortgagee acquired the title to the property covered, conveyed it to a third person and takes in return a purchase-money mortgage, in order that such new interest may be legally brought within the protection of an unexpired indemnity contract.

Since the plaintiff mortgage company failed to make known to defendant the transfer of title of the property involved, under the terms of the mortgagee clause attached to the renewal policy, which policy was void as to the plaintiff holding corporation to which the conveyance was made, and also as to the execution of the new mortgage, the conclusion is that judgment in favor of defendant and against the plaintiffs of no cause should be entered.