**RASH et al. v. NORTH BRITISH & MER-CANTILE INS. CO., Limited.**

Court of Appeals of Kentucky.

Nov. 30, 1951.

Rehearing Denied March 28, 1952.

James Sampson, Edw. G. Hill, Harlan, for appellants.

James W. Smith, Middlesboro, Daniel Boone Smith, Ray O. Shehan, Harlan, for appellee.

STANLEY, Commissioner.

The appellee issued a policy of insurance to the appellants, automobile dealers, by which it insured them against loss or damage to a certain automobile caused by "collision or upset," in the sum of $1,200. The car was so destroyed. The insurance company denied liability because of breach of a covenant as to the use to which the car should be put. The use, as stated in the policy, was that it would be "Held for sale." Another of its terms was that the insurance did not apply "while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy." Upon the interpretation of the policy in relation to the facts, the court directed a verdict for the insurance company and judgment was entered accordingly.

The company has contended that there was a transfer of title and possession of the automobile, and it was taken out of the classification of use "Held for sale," and thereby released it of liability.

The insured dealers had agreed to sell the car to one Pruitt by a conditional sales contract calling for a cash payment of $500. Pruitt signed the contract and paid $50, but the dealers held the contract pending the payment of the balance of $450. They loaned him the car to go to a place in the county where he expected to get the money, but he was not successful. With their permission, he drove it to a point in Tennessee for the same purpose. Again he failed. But instead of immediately returning the car to the garage, he went to his home in the country. He had had the car about a week, and it was wrecked while he was driving it.

■ We agree that insurance protection is afforded only when the vehicle is used for the purposes declared by the insured, such as commercial, pleasure, business, etc., though an unsubstantial deviation is not of consequence. Appleman, Ins. Law and Practice, Secs. 4325, 4326.

■ The word "hold" as applied to property is technical. It embraces two ideas: that of actual possession and dominion and that of being invested with legal title or the right to hold or claim possession. Ballentine's Law Dictionary; Taylor & Crate v. Asher, 223 Ky. 574, 4 S.W.2d 385. We think it was used in this policy in the sense of being owned and legally possessed until it was sold. We cannot agree with the insurance company that the term should be given the narrow construction of contemplating that the car should be at the time it is damaged in the *actual* possession of the dealers or their agent. This would require the dealers to "use" the car only for storage, exhibition or personal demonstration. It would be unreasonable to say that was the only "use" contemplated by the contract.

■ The fact that the prospective purchaser had paid $50 of the consideration and signed the contract did not of itself transfer to him any sort or degree of ownership. The contract was withheld by the dealers. The absence of a delivery of the contract and of an intent to transfer title under the terms of a conditional sale, KRS 261.180, makes inapplicable the question of who is the owner of a car or other chattel where such a contract has been signed and delivered. The prospective buyer was permitted to use the car temporarily. It was presumably to the interest of the dealer that he be favored and certainly to their interest that he raise the balance of the money. Though the car was wrecked while he was using it on a different mission, still its use was the purpose for which the insured had let him have it. The legal or constructive possession was still that of the owners.

■ An insurance contract is presumed to be made with knowledge of general practices and customs of the trade in which insurance is made unless express terms of the policy repel such inference. Cramer & King Co. v. National Surety Co., 103 N.J.L. 83, 134 A. 771. Insurance agents will not be heard to say they are

more ignorant or less realistic than average men. It is common knowledge that dealers in automobiles, especially used cars such as was that covered here, turn them over to prospective buyers to try out and lend them to such anticipated customers for testing and demonstration. The insurer issued this policy charged with that knowledge.

The appellee relies on Hunter v. Royal Insurance Co., 209 App.Div. 15, 203 N.Y.S. 833, 834. In that case a policy was issued to a dealer covering all automobiles "owned and for sale by the insured." A car had been loaned to one of the insured's employees as a favor for his own use and pleasure while on a vacation, and it was destroyed by fire while on the trip. Among the "warranties" the insured had stated, "the uses to which the automobile described are and will be put are 'on sale.'" The court construed the policy as permitting removal of the car to a place other than that given as the usual place of storage only for purposes naturally and necessarily incident to the conduct of the dealing in automobiles. Said the court: "The parties undoubtedly contemplated that while this policy was in force the general practice of dealers in handling cars 'for sale' would be observed", and that the policy should be interpreted with fair consideration of the custom of dealers in their efforts to dispose of the property. However, the car was not being put to such use at the time it was destroyed. We think the principle announced is sound, as well as the conclusion; but in the instant case the "use" of the car was within the reasonable practices of car dealers and was within the contemplation of the parties.

In American Automobile Insurance Co. v. Powers, 291 Mich. 306, 289 N.W. 170, a garage company had furnished a car to an employee for which he agreed to pay, but did not give him a certificate of title, reserving the right to resell the car. It was held that the car was covered by the omnibus clause of the policy even though a "sale on time pay plan" was specifically excluded.

In Security Ins. Co. v. Sellers-Sammons-Signor Motor Co., Tex.Civ.App., 235 S. W. 617, 621, a policy was issued to automobile dealers insuring against loss through theft of every car received by them until it should be "delivered to the purchaser or until same otherwise passes out of the possession of the assured". The dealers permitted a prospective purchaser to take an automobile temporarily, pending collection of his check for the price, and he stole it. The insurance company was held liable, the court construing the limiting terms of the policy as not applying to or comprehending the possession which the insured had delivered to the prospective purchaser. Said the court, "The possession so delivered was in a very qualified and limited sense; it was intended and understood to be temporary only, with the distinct recognition of the plaintiffs' right to retake the property at any time, and at all events to be only of a temporary character." Of like effect is Fidelity Union Fire Ins. Co. v. Ballew-Satterfield Co., Tex.Civ.App., 10 S.W.2d 163.

We have an analogous case in Atlas Assurance Co. v. Cotter, 226 Ky. 554, 11 S.W.2d 427, involving fire insurance on a stock of merchandise. The insured had made a conditional arrangement for the sale of the business for installment payments, but the arrangement was discontinued before the property burned. It was held there had been no change of interest, title or possession that avoided the liability.

In the light of the familiar rule that where the meaning or application of an insurance policy is clouded in doubt, it will be cleared in favor of the insured, and from the foregoing reasoning and authorities we conclude the trial court should have directed the verdict for the plaintiffs rather than the defendant.

Judgment reversed.

CAMMACK, C. J., and SIMS, J., dissenting.